## B. Lowenstein & Bros. *v.* Goodbar & Co. et al.

1. Bona Fide Purchaser. *Fraud. Notice to agent. Scope of agency.*

   Certain creditors effected, in Memphis, Tenn., a purchase of their debtor's stock of goods in this state, assuming to pay certain debts, as to which the debtor was discharged. A creditor, whose debt was assumed, was the regular retained attorney of the debtor in his business, and, after the terms of the sale were agreed on, he, being requested by telegram, prepared the bill of sale, and took temporary possession of the goods, until the purchasers' agent could arrive. *Held,* this did not constitute him the agent of the purchasers in making their purchase, and his knowledge of the fictitious character of his own claim could not, of itself, affect the *bona fides* of the purchase.

2. Contract. *Minds of parties must meet. Essential facts.*

   In such case the validity of the sale will not be affected by the fact that one of the creditors understood that his debt was assumed absolutely by the purchasers, while they understood that its payment was to be on condition that the proceeds of the goods should be sufficient. Since both parties to the sale got all they contracted for—the purchaser the goods, and the debtor a complete discharge from the debts—their minds met on every essential feature of the contract.

3. Same. *Mistake of fact. Must be material.*

   The mutual mistake upon which a sale will be avoided, must be as to an essential fact which forms an inducement to the sale, such as would justify the inference that, the truth being known, the sale would not have occurred.

4. Voidable Contract. *Who may avoid. Right of creditors.*

   Creditors cannot assert for their debtor his right to set aside a sale which, because of mistake, is voidable as to him, and which he has not sought to avoid.

From the circuit court of Sharkey county.
Hon. J. D. Gilland, Judge.

This is an action by the sheriff of Sharkey county, for the use of B. Lowenstein & Bros., against Goodbar & Co., principals, and Cartright and others, sureties, on a bond of in-

demnity, executed by defendants in the course of an attachment suit by Goodbar & Co. against W. R. Hudson & Co.

W. R. Hudson was a merchant, at Rolling Fork, in said county, doing business under the name of W. R. Hudson & Co. On the 6th of January, 1890, he sold his entire stock of merchandise to B. Lowenstein & Bros., of Memphis, and at once surrendered possession. Immediately afterwards, Goodbar & Co. sued out an attachment against Hudson, and directed the sheriff to levy it upon the goods sold to Lowenstein & Bros. The sheriff demanded a bond of indemnity, which was executed by Goodbar & Co., and the levy made as directed. Before the writ and bond were returned, this action was brought on the indemnifying bond.

The defendants pleaded that the property levied on was not the property of B. Lowenstein & Bros., because the sale to them by Hudson was fraudulent. Afterwards, there were two other pleas, setting up that the bond was not returned and filed with the attachment writ at the time of its return, and that the suit was brought on the bond before it was properly returned. In view of the opinion, it is not necessary to set out the evidence or arguments as to this, or to notice the further course of the pleadings. On the trial it was shown that the consideration of the sale by Hudson to Lowenstein & Bros. was the release of the debt due to them by Hudson, amounting to $2,879, and the assumption by them of debts of Hudson, as follows: to Waddill, Catchings & Co., $2,350; to W. B. Catchings, $1,500, and to R. L. McLaurin, $2,000, and the discharge of Hudson by these creditors. Of these, it was contended by the defendants that the alleged debt to R. L. McLaurin was fictitious. The evidence as to this is conflicting. It was shown that H. J. and R. L. McLaurin were partners in the practice of law, at Rolling Fork, and that they were retained generally in his business by Hudson, and that Hudson had become indebted for fees to H. J. McLaurin in the sum of $1,500, and to the firm of McLaurin & McLaurin in the sum of $500; that Hudson had promised H. J.

McLaurin to sell his stock to pay him and others, but that H. J. McLaurin was largely indebted, and, because of this indebtedness and his fear of efforts by his creditors to subject any property he might acquire, he sold his claim against Hudson to R. L. McLaurin. The matter stood thus when H. J. McLaurin went from Rolling Fork to Memphis to negotiate in behalf of Hudson the sale to Lowenstein & Bros. The circumstances, as found by the court, attending the negotiation and the consequent sale of the stock to Lowenstein & Bros. are stated in the opinion.

It is not contended that, if all the debts assumed are valid, the price was inadequate. There was some conflict in the evidence as to whether Lowenstein & Bros., in assuming the debts of the other creditors mentioned, agreed to pay them absolutely or to pay them out of the proceeds of the goods purchased, if sufficient, the agent of Waddill, Catchings & Co. contending that the former was the agreement, while the agent of Lowenstein & Bros. testifies that the latter was the understanding. Because of this, it is insisted by defendants that the minds of Lowenstein & Bros. and of Hudson did not meet in the trade, and the sale was not complete and valid.

By the instructions granted by the court, the question was submitted to the jury whether R. L. McLaurin, who wrote the bill of sale and took possession of the goods in the first instance for Lowenstein & Bros., was the agent and attorney of the latter in making the purchase, so that his knowledge of the character of his own claim could affect the good faith of the purchase. The court also granted an instruction, submitting to the jury to determine whether the minds of the parties met in the contract of purchase.

The foregoing statement is sufficient, with the statement contained in the opinion, for a proper understanding of the case. The verdict and judgment were in favor of the defendants, and, after motion for new trial overruled, the plaintiffs appeal.

*J. H. Watson,* for appellants,

Filed a brief, discussing the evidence and the instructions of the court, contending that H. J. McLaurin was not the agent of Lowenstein & Bros. in negotiating their purchase, and that his notice of the character of his own debt, not having been acquired in the business of Lowenstein & Bros., could not affect their *bona fides;* and further contending that, if he is to be deemed the agent of appellants, there is no proof of fraud in the record.

*W. V. Sullivan* and *Nugent & McWillie,* for appellees.

We must accept the verdict of the jury as establishing that the debt to H. J. McLaurin was fictitious or grossly exaggerated. We think the evidence establishes that R. L. McLaurin represented B. Lowenstein & Bros. This being true, his notice of the fictitious character of his own debt must be imputed to them. See Wade on Notice, §§ 33, 672. Although the information or knowledge was obtained by McLaurin in a former transaction, it would operate as constructive notice to his principal in this transaction, if such notice was so precise and definite that it was necessarily present in his mind while engaged in the second transaction. 2 Pomeroy's Eq. Jur., § 672.

It was proper to leave to the jury to determine whether the nature of R. L. McLaurin's claim was present in his mind and that of H. J. McLaurin, when the purchase was made.

It is shown that Hudson and B. Lowenstein & Bros. did not have the same understanding of the terms of the sale, and its effect upon the rights and obligations arising out of it. Accordingly, there was no complete contract. The minds of the parties never met. 1 Parsons' on Contracts, 475.

COOPER, J., delivered the opinion of the court.

The verdict in this case is not supported by the evidence, and the instructions asked and secured by the defendants should not have been given.

There is nothing to suggest that Lowenstein & Bros. had any notice that any of the claims against Hudson, the payment of which they assumed, were simulated or exaggerated, if in fact they were.

Neither H. J. nor R. L. McLaurin was their agent to negotiate a purchase from Hudson. The terms of the sale had been agreed on in Memphis between H. J. McLaurin, acting for Hudson and R. L. McLaurin, and Percy and Waddill, acting for Waddill, Catchings & Co., and B. F. Catchings and Lowenstein & Bros., acting for themselves. R. L. McLaurin had no other agency for appellants than to receive possession of the stock of goods, in consummation of a sale, the terms and consideration of which had already been fixed by the parties. He was but to put in form the bill of sale of the goods, and this he did for all parties, and to take possession of the goods until the arrival of appellants' representative. He was never agent of appellants in such sense that his knowledge of the character of his own professed demand against Hudson, as simulated in whole or in part, should be imputed to Lowenstein & Bros., and operate to defeat the sale which was being made or arranged by all the other parties. The transaction is capable of but one construction. Hudson was insolvent, and had determined to secure Waddill, Catchings & Co. and W. B. Catchings in their demands. He also owed Lowenstein & Bros., and was willing to carry out any arrangement which H. J. McLaurin should make for him, the effect of which would be to secure the payment of the debts due to Waddill, Catchings & Co. and W. B. Catchings. H. J. McLaurin went to Memphis to negotiate for Hudson, having an eye in the negotiation; however, toward the securing his own debt, which, for private reasons, he transferred to R. L. McLaurin before leaving Rolling Fork. R. L. McLaurin remained at Rolling Fork, to execute there, under the direction of H. J. McLaurin (Hudson's representative), any plan that might be agreed on in Memphis for the payment of the creditors Hudson desired to prefer. It was agreed in Memphis

that Lowenstein & Bros. should buy the entire stock of goods ·of Hudson, and, in consideration thereof, should assume the payment of the debts of Waddill, Catchings & Co., W. B. ·Catchings· and R. L. McLaurin, and, in addition thereto, ·should discharge their own demand against him. The agreement was telegraphed to R. L. McLaurin, who prepared a bill of sale of the goods, which Hudson signed, and also re- ·ceived possession of the stock for Lowenstein & Bros.

R. L. McLaurin negotiated no purchase for Lowenstein & Bros. from Hudson; the sale was agreed on in Memphis, and, so far as the record suggests, R. L. ·McLaurin's agency for Lowenstein consisted only in receiving the possession of the ·goods. Under these circumstances, it was error to submit ·to the jury the question whether R. L. McLaurin was the ·agent of Lowenstein & Bros. in purchasing the stock so as to affect the good faith of their purchase by reason of his knowledge of the character of his claim against Hudson.

It was also error for the court to submit to the jury the question whether or not the minds of Hudson and Lowenstein & Bros. met upon the contract of sale. The inquiry, in view of the undisputed testimony, was wholly immaterial. Hudson's desire was to secure his own discharge from certain agreed debts. He may have understood, and probably did understand, that Lowenstein & Bros. became absolutely and unconditionally bound to immediately pay them to the parties to whom he was indebted. It was no concern of his, however, what arrangements these creditors and Lowenstein & Bros. had made, as between themselves, for the time or condition of the payments. Hudson was not at all injured by the fact that Waddill, Catchings & Co. were to be first paid, and they, not until Lowenstein & Bros. should sell the goods bought of Hudson, nor that McLaurin should not be, in fact, paid at all, unless the goods should bring a sufficient sum to pay all the debts for which they were bought.

Hudson was instantly and absolutely discharged from all these demands by the sale of the goods. As to him, there

was no essential difference between the contract he under-
stood he was making and the one Lowenstein & Bros. under-
stood they were making.  In truth, there was no mistake,
either as to the subject-matter of the contract or as to the
consideration.  Lowenstein & Bros. got exactly what they in-
tended to get and what Hudson intended for them to have—
the goods.  Hudson got precisely what he intended to get—
a discharge from certain debts.  Hudson probably did not
know the terms of the collateral agreement between Lowen-
stein & Bros. and these creditors, but this was immaterial.

Mr. Benjamin thus formulates the rule in cases of mistake:
" Where there has been a common mistake as to some essen-
tial fact forming an inducement to the sale—that is, when the
circumstances justify the inference that no contract would
have been made if the whole truth had been known to the
parties—the sale is voidable."  Benj. on Sales, § 415.

It is difficult to perceive upon what grounds the creditors
of Hudson may treat the sale as void, when, at most, it would
have been voidable by him (if the mistake had been in refer-
ence to an essential fact), and which he has not sought to
avoid.

*Judgment reversed and cause remanded.*